UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

LEONARD JOSEPH CAMPANELLO, FABRIZIO MILITO,
CHANDLER WILSON, ALEXANDRA K. CLARK,
DAVID MORRISON, Sr., ASHLEY PEACOCK,
STEVEN RICHTER, EMILY BRAUNSTEIN,
CHRISTOPHER BRITTEN, LISA KANBAR, LISA BEATTIE,
MICHELLE OLMO GARCIA, EDGAR MARTY,
REBECCA PEBBLES, et al.; and as Representatives of all
Disenfranchised and Purged voters in the State
of New York.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 18 2016 ★

LONG ISLAND OFFICE

CV-16 1892

                        Plaintiffs,                    Case No.

       -against-

NEW YORK STATE BOARD OF ELECTIONS;          VERIFIED COMPLAINT
ANDREW J. SPANO and GREGORY P. PETERSON
in their official capacities as Commissioners of the New
York State Board of Elections; DOUGLAS A KELLNER        FEUERSTEIN, J
and PETER S. KOSINSKI in their official capacities as
Co-Chair of the New York State Board of Elections;
TODD D. VALENTIE and ROBERT A. BREHM,
 in their official capacities as Co-Executive Directors of the
New York State Board of Elections; and as Representatives        TOMLINSON, M
of all Commissioners of County Boards of Elections in
New York State.

                        Defendants.

------------------------------------------------------------------x


COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

       Plaintiffs, by and through their undersigned counsel, hereby complain of the

Defendants and allege as follows:

NATURE OF THE ACTION

       1.     This action seeks declaratory and injunctive relief to redress

the widespread and ongoing removal of eligible voters from the State of New York's

voter-registration roll or assigned incorrect parrty affiliations in violation of the National

Voter Registration Act of 1993 ("NVRA"), 52 U.S.C.A. § 20501 et seq, and the U.S.

Constitution's guarantee of equal protection, preserved by Section 1 of the Fourteenth

Amendment.  As a result, Plaintiffs, who are eligible New York voters, are likely to be

deprived of the right to vote as have the thousands of similarly situated voters who have

complained to the Board of Elections regarding improper voter registration switches and

purges. Tens of thousands of New Yorkers face the threat of disenfranchisement in the

2016 Presidential Preference Primary to be held on April 19, 2016 and will continue to be

shut out of the democratic process unless and until Defendants reform their registration

practices. In Brooklyn alone, 63,558 Democrats have been inexplicably purged from

voter rolls. *See*

http://www.wnyc.org/story/democratic-voter-rolls-drop-more-60000-brooklyn-presidenti

al-primary/

2.      After finding that "discriminatory and unfair registration laws and

procedures can have a direct and damaging effect on voter participation," and that state

governments have a "duty" to promote voting and voter registration, Congress enacted

the National Voter Registration Act ("NVRA") to "establish procedures that will increase

the number of eligible citizens who register to vote in elections for Federal office" while

"ensuring that accurate and current voter registration rolls are maintained."Id.52 § 20501

(b)(1), (4).

3.      Since Courts are loath to second-guess election results, it makes it virtually impossible to redress any constitutional violations that occurred during an election. *Bush v. Gore*, 531 U.S. 98 (2000). As such, Plaintiffs and thousands of other voters similarly situated seek a declaratory judgment in anticipation of the tumult that will assuredly engulf tomorrow's election.

4.      A declaratory judgment, Pursuant to 28 U.S. Code § 2201, from this Court allowing plaintiffs to vote as regular eligible voters and an Order compelling the Board of Elections to count and preserve all provisional ballots will assure the safeguarding of tens of thousands of New Yorkers' right to vote who have been inexplicably purged, and will provide much needed clarification to N.Y. Elec. Law § 8-303 (2) (b), one of the nation's most opaque and oppressive voter laws.

5.      This case meets all the requirements of Rule 65 of the Federal Rules of Civil Procedure regarding injunctive relief: 1) Plaintiffs and other voters similarly situated will be irreparably harmed if their right to vote is not restored since there will be no way to restore the opportunity to vote after the primary to be held on April 19, 2016; 2) Plaintiffs are in imminent harm of losing their right to vote.  They have beseeched the various Boards of Election without result.  Nothing can protect their right to vote save an order from this Court; 3) The injury that will be sustained is immeasurable and no monetary amount can redress the wrong that awaits plaintiffs. 4) Hundreds of individuals have submitted affidavits in support of the fact that they have been erroneously purged from the voter rolls or the Board of Elections has failed to even enroll them; Plaintiffs will prevail in vindicating their rights if given their day in Court; 5) The balance of

hardships if this Order to Show Cause is not granted falls squarely on the shoulders of the New York electorate and not the Board of elections. The Board of Elections has all the relevant data and evidentiary material needed to definitively state why someone has failed to appear on the voter rolls. The Board of Elections has a statutory obligation to maintain such records and should be able to easily provide such records at a hearing; 6) A declaration of these plaintiffs' rights will serve to foster a belief in democracy and that in New York, unlike other states, we can perform an election properly.

6.      Furthermore, this office has contacted the New York State Board of Elections at 9.a.m. and put it on Notice that it intends to file this suit in Federal Court today, April 18, 2016. The Board of Elections indicated that it would call this office back. This office has yet to receive a call back from the Board of Election.

<u>JURISDICITON AND VENUE</u>

7.      This Court's jurisdiction over Plaintiffs' claims is predicated on 28 U.S.C. 1331, 1343(a)(3) and 42 U.S.C. §§ 1983 and 1988. This Court has Jurisdiction to grant declaratory relief pursuant to 28 U.S.C. 2201 and 2202.

8.      This Court has personal jurisdiction over Defendants, all of whom are sued in their official capacities and are either government entities, elected, or appointed officials in New York State. All Defendants work or reside in the State of New York.

9.      Venue in this District is proper under 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and it this division.

PARTIES

10.     Plaintiff Leonard Joseph Campanello is a United States Citizen, DOB

08/16/1991, registered to vote in Suffolk County, New York. Leonard[SM1] registered to

vote for the first time as a Democrat in 2009. On 3/15/2016, he discovered that his party

affiliation had been switched to Republican without his knowledge or consent. Through a

phone conversation with the Suffolk County Board of Elections, Leonard was notified

that a signed paper form had been filed, in person, to alter his party affiliation. On this

call, the BoE representative confirmed Leonard's original 2009 registration as Democrat,

and electronically forwarded the "change of party affiliation" form, which indeed bore

his signature. However, Leonard has provided evidence showing that the signature

appearing on that form was an identical, pixel-by-pixel copy of the electronic signature

appearing on his driver's license in 2007, which had been electronically transferred to the

"change of party affiliation" form. Attached and annexed hereto as "Exhibit A."

11.     Plaintiff Fabrizio Milito is a United States Citizen, DOB 2/9/1991,

registered to vote in Nassau County, New York. Fabrizio registered to vote for the first

time as a Democrat in 2009. On 3/31/2016, he discovered that his party affiliation had

been switched to independent (no party affiliation) without his knowledge or consent.

Fabrizio has provided evidence confirming that he was indeed registered to vote as a

Democrat in 2009. Attached and annexed hereto as "Exhibit B."

12.     Plaintiff Chandler Wilson is a United States Citizen, DOB 7/5/2014,

registered to vote in New York County, New York. Chandler registered to vote for the

first time as a Democrat on 5/15/2000. On 4/1/2016, he discovered that his party

affiliation had been switched to independent (no party affiliation) without his knowledge or consent. Chandler has provided evidence in the form of his voter ID card. Attached and annexed hereto as" Exhibit C"

13.     Plaintiff Alexandra K. Clark is a United States Citizen, DOB 3/14/1964, registered to vote in Suffolk County, New York. Alexandra switched her party affiliation to Democrat on 10/09/2015. On 3/15/2016, she discovered that her party affiliation had not been updated. Alexandra was informed by a supervisor at the Suffolk County Board of Elections that her change of party affiliation request was not received in time. Alexandra has provided electronic evidence documenting that her party affiliation change was indeed made online on October 9th, 2015. Attached and annexed hereto as "Exhibit D."

14.     Plaintiff David Morrison, Sr., is a United States Citizen and disabled veteran, DOB 9/12/1956, registered to vote in New York County, New York. David changed his party affiliation to Democrat on 10/8/2015 and received verbal confirmation from a Board of Elections employee on the same date. On 03/27/2016, David discovered that his registration status had either not been updated, or had been switched back to independent (no party affiliation). David has provided evidence documenting his communications with the Board of Elections, his change of party affiliation to Democrat, and his current status as an independent (no party affiliation). Attached and annexed hereto as "Exhibit E."

15.     Plaintiff Ashley Peacock is a United States Citizen, DOB 5/25/1985, registered to vote in Queens County, New York. Ashley registered to vote for the first

time as a Democrat on 3/23/2016. On 4/13/2016 she discovered that her voter registration

had been purged or was never processed. She has contacted the NY State Board of

Elections Division of Election Law, but has received no update. Attached and Annexed

hereto as "Exhibit F."

16.     Plaintiff Steven Richter is a United States Citizen, DOB 9/23/1977,

registered to vote in Rockland County, New York. On 9/20/2015, Steven changed his

party affiliation to Democrat. He has provided evidence documenting his entry to the

Democratic Party that day. On 4/14/2016, Steven discovered that his party affiliation had

been changed, without his knowledge or consent, to independent (no party affiliation).

Attached and annexed hereto as "Exhibit G"

17.     Plaintiff Emily Braunstein is a United States Citizen, DOB 7/5/1985,

registered to vote in Kings County, New York. Emily changed her party affiliation to

Democrat in 2012. On 4/7/2016, she discovered that her party affiliation had been

changed, without her knowledge or consent, to independent (no party affiliation).

Attached and annexed hereto as "Exhibit H."

18.     Plaintiff Christopher Britten is a United States Citizen, DOB 11/22/1988,

registered to vote in Rensselaer County, New York. On 3/17/2016, Christopher registered

to vote for the first time as a Democrat electronically, and received e-mail confirmation

of his registration. On 4/14/2016, he discovered that his voter registration had been

purged.  Attached and annexed hereto as "Exhibit I."

19.     Plaintiff Lisa Kanbar is a United States Citizen, DOB 9/9/1971, registered

to vote in Kings County, New York. On 8/5/2015, Lisa electronically registered to vote

for the first time as a Democrat, and received e-mail confirmation. On 4/14/2016, Lisa

discovered that her party affiliation had been changed to a different party, without her

knowledge or consent. Attached and annexed hereto as "Exhibit J"

20.     Plaintiff Lisa Beattie is a United States Citizen, DOB 10/30/1967,

registered to vote in Onondaga County, New York. Lisa registered to vote for the first

time as a Democrat on 9/1/1989. On 4/11/2016, she discovered that her voter registration

had been purged. The Onondaga County Board of Elections informed her that this was

due to clerical error, but that she would nevertheless be unable to vote normally on

Tuesday, April 19th, 2016. Attached and annexed hereto as "Exhibit K."

21.     Plaintiff Michelle Olmo Garcia is a United States Citizen, DOB

10/18/1985. Michelle registered to vote for the first time as a Democrat on 4/10/2008. On

4/13/2016 she discovered that her voter registration had been purged. Attached and

annexed hereto as "Exhibit L."

22.     Plaintiff Edgar Marty is a United States Citizen, DOB 1/24/1979,

registered to vote in Queens County, New York. Edgar filed paperwork to change his

party affiliation to Democrat on October 1st, 2015. On April 14th, 2016, he discovered that

his party affiliation had not been changed to Democrat in accordance with the paperwork

he filed before the deadline. Attached and annexed hereto as "Exhibit M."

23.     Plaintiff Rebecca Peebles is a United States Citizen, DOB 2/5/1975,

registered to vote in Queens County, New York. Rebecca registered to vote for the first

time as a Democrat on 04/14/2003. On 03/24/2016, she discovered that her party

affiliation had been changed to independent (no party affiliation) without her knowledge or consent. Attached and annexed hereto as "Exhibit N."

25.     Election Justice USA is a national organization advancing election integrity, transparency, and the protection of voting rights for all Americans. Although not a named Plaintiff, Election Justice USA has provided unsworn affidavits of over two-hundred (200) disenfranchised/purged voters who will not be able to vote in the upcoming primary:

   a.   Attached and annexed hereto as "Exhibit O" is a class of voters that Registered as a Democrat for the first time and or registered before the year 2015 and or were not registered.

   b.   Attached and annexed hereto as "Exhibit P" is a class of voters who Registered as Democrat for the first time and or registered before 2015 and were put in wrong party affiliation or Independent.

   c.   Attached and annexed hereto as "Exhibit Q" is a class of voters who registered as democrat for the first time and or were a new voter this election cycle and were not registered.

   d.   Attached and annexed hereto as "Exhibit R" is a class of voters who registered as Democrat for the first time and or were a new voter this election cycle and were put into wrong party affiliation or independent.

   e.   Attached and annexed hereto as "Exhibit S" is a class of voters who registered as democrat for the first time and or were a new voter this

election cycle and were switched into wrong party affiliation or random party.

f.   Attached and annexed hereto as "Exhibit T" is a class of voters who tried to change their registration to democrat or tried to change before 2015 and were put into wrong party affiliation or registered independent.

g.   Attached and annexed hereto as "Exhibit U" is a class of voters who tried to change their registration to democrat before 2015  and were switched to wrong party affiliation and or random party.

h.   Attached and annexed hereto as "Exhibit V" is a class of voters who tried to change to change their registration to democrat before October 19, 2014 or were newly registered and were changed to wrong affiliation or random

i.   Attached and annexed hereto as "Exhibit W" is a class of voters who tried to change their registration to democrat before October 19, 2014 and were newly registered and were in not registered.

j.   Attached and annexed hereto as "Exhibit X" is a class of voters who tried to change their registration to democrat before 2015  and were switched to wrong party affiliation or independent.

26.   Defendant, New York State Board of Elections has "jurisdiction of, and [is] responsible for, the execution and enforcement of…statutes governing campaigns, elections and related procedures." N.Y. Elec. Law 3-104(1). The New York State Board of Elections acts pursuant to and under color of state law to ensure that local board of

elections across the state comply with and implement the election laws of the State of New York in accordance with the National Voters Rights Act ("NVRA").

27.      Defendant Anthony J. Spano is a Commissioner of the State Board of Elections, which has "jurisdiction of, and [is] responsible for, the execution and enforcement of….statutes governing campaigns, elections and related procedures." Defendant Gregory P. Peterson is a Commissioner of the State Board of Elections, which has "jurisdiction of, and [is] responsible for, the execution and enforcement of….statutes governing campaigns, elections and related procedures."

28.      Defendant Douglas A. Kellner is a Co-Chair of the State Board of Elections, which has "jurisdiction of, and [is] responsible for, the execution and enforcement of….statutes governing campaigns, elections and related procedures."

29.      Defendant Peter S. Kosinski is a Co-Chair of the State Board of Elections, which has "jurisdiction of, and [is] responsible for, the execution and enforcement of….statutes governing campaigns, elections and related procedures." Defendant Todd D. Valentine is a Co-Executive Director of the State Board of Elections, which has "jurisdiction of, and [is] responsible for, the execution and enforcement of….statutes governing campaigns, elections and related procedures."

30.      Defendant Robert A. Brehm is a Co-Executive Director of the State Board of Elections, which has "jurisdiction of, and [is] responsible for, the execution and enforcement of….statutes governing campaigns, elections and related procedures."

31.      Defendants, Commissioners of the New York State Board of Elections are being sued in their official capacities as defendants in their own right, and as

representative parties on behalf of all commissioners of county board of elections in New York State. The class of commissioners of county Board of Elections are so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class, the defenses of the counties Board of Elections are typical of the defenses of the class, and the New York State Board of Elections will fairly and adequately protect the interests of the class.

<u>STATEMENT OF FACTS</u>

32.     The 2016 Presidential Primary Election cycle has produced record breaking turnout and a general excitement that has motivated many people to vote who are voting for the first time or who have not voted in years. Unfortunately, States throughout the nation have found themselves to be ill-equipped to deal with the unprecedented voter turnout, and the elections were botched causing dubious results which foster a growing sense of mistrust in the American Democratic process. See http://www.nytimes.com/2016/04/17/opinion/sunday/why-americans-cant-vote.html?_r=0

33.     For example, Arizona's incompetency in handling its primary election has resulted in the disenfranchisement of tens of thousands of voters; a primary election result that is irreparably erroneous; and numerous contentious lawsuits with little chance of redressing the substantial constitutional violations. *See* Feldman v. Arizona Secretary of State 2:16-cv-01065-DLR.

33.     Such systemic incompetence demoralizes the electorate and fundamentally damages our democratic system. This lawsuit is brought to cutoff impending

constitutional violations; foster a confidence in the electoral process in New York; and to ensure that citizens' fundamental right to elect their chosen representatives is preserved.

34.     One of the major obstacles to voting that has led to voters being turned away in droves in other states is errors on the part of various Boards of Elections in purging many eligible voters from their voter rolls, or incorrectly assigning other party affiliations or no party affiliations to registered voters, thereby depriving those voters of the right to vote in the primary of the party of their affiliation.  Currently in Brooklyn alone over 60,000 democratic voters have been inexplicably purged from the voter rolls.

35.     New York stands in grave danger of being counted among the states that failed to provide adequate access to the electoral process since New York State, upon information and belief, has purged, failed to enroll, incorrectly recorded, or altered the voter registrations of tens of thousands, if not hundreds of thousands of eligible voters.

36.     This lawsuit unites hundreds of voters who affirm that they are in fact eligible to vote in the Democratic Primary on April 19, 2016, yet they have been stricken from the voter rolls and stand at the precipice of being permanently deprived of their constitutional rights on April 19, 2016.

37.     New York's procedure for dealing with voters who fail to appear on the rolls in the polling place is byzantine in its complexity; onerous on the burden it places on the voter; and utterly ineffective in preserving voters' rights.

38.     If a voter is not on the rolls, or whose party affiliation is recorded incorrectly, or who has been recorded as having no party affiliation her or his polling location, she or he must vote on a "provisional ballot" which will likely go uncounted.

*See* Elec. Law § 8-303 (2) (b).  This is because Elec. Law § 8-303 (2) (b) allows the voter to cast a provisional ballot but will not count said ballot if said voter has been purged or improperly registered.  Considering, thousands of voters, if not hundreds of thousands, have been inexplicably purged or improperly registered, Elec. Law § 8-303 (2) (b) provides no remedy to these disenfranchised voters.

39.     As an alternative to a provisional ballot, a voter can go through the onerous process of seeking an order permitting her or him to vote on a regular ballot. While a court order is effective, the process of securing a court order is simply impracticable for thousands of working New Yorkers.

40.     The New York legislature has failed to declare election days a holiday.  As a result, many voters are unable to vote since they are unable to withstand the financial burden of missing time from work.

41.     Many voters are only able to carve out adequate time to cast a vote, yet are unable to take the hours that it would require to get a court order permitting them to vote if they are not on the voter rolls. Others are simply too intimidated to seek a court order and decide to turn away from the polls, dejected and skeptical about the democratic process.

42.     African American, Hispanics, and Native Americans are disproportionately affected by lack of information concerning the voting process and will be disproportionately affected by purges and failed registrations in violation of 42 U.S.C. § 1983.

43.     This suit has the modest aim of restoring these Plaintiffs' rights and asks this Court to issue a Declaratory Judgment allowing the hundreds of Plaintiffs in this suit to vote by regular ballot in tomorrow's election.

44.     This suit also asks this Court to find that N.Y. Elec. Law § 8-303 (2) (b) is unconstitutional as applied in the case of the tens of thousands of voters, if not hundreds of thousands, who will find themselves stricken from voter rolls on April 19, 2016 and who will be irrevocably deprived of their rights to vote.

45.     In place of N.Y. Elec. Law 8-303 (2) (b), it is requested that this Court issue an order allowing the tens of thousands of voters who have been erroneously stricken from the rolls, otherwise incorrectly deprived of their rights to vote in the April 19, 2016 primary, and who are not yet plaintiffs in this action to be permitted to vote though a provisional ballot if they affirm under penalty of perjury that they are in fact duly enrolled in their party and eligible to vote in the primary, essentially mirroring N.Y. Elec. Law 8-303 (2) (b).

46.     However it should be Ordered that votes pursuant to N.Y. Elec. Law 8-303 (2) (b) be counted with all of the other duly casted votes subject to later challenging for cause at a hearing to be determined upon the attached Order to Show Cause instead of simply discarded by the Board of Election in a closed room without benefit of due process to the voter which is the current practice and in violation of voters constitutional rights.

47.     This common sense solution permits those erroneously stricken from the record to cast a vote and puts the onus on the Board of Election to prove at a hearing as determined by this Court that the vote is invalid.

48.     This reversal of the burden of proof in the voting process results in a fairer result since courts are loath to overrule an election. *Bush v. Gore*, 531 U.S. 98 (2000). Furthermore, this reversal puts the burden on The Board of Elections which has direct access to the voting registration records, while the voter does not. If the burden of proof remains on the voter, who has no access to the evidence that would establish his or her right to vote in the primary, the voter whose rights are violated is effectively deprived of redress.

49.     The only logical solution is to let those who want to vote to be permitted to vote rather than requiring the deprived voter to request that there be a new election, which is akin to un-ringing a bell.

50.     This reversal of the burden of proof puts the burden on the Board of Election who wishes to deprive the citizen of her or his vote, rather than depriving the citizen of her or his right without benefit of any due process.

51.     In the alternative, it is requested that this court find that New York's closed primary process is an unconstitutional deprivation of rights. In which case, this Court should issue an Order declaring New York an Open Primary State for the April 19, 2016 Primary election cycle.

*New York's Voter Registration Process*

52.      Two state agencies in New York, the New York Department of Motor

Vehicles ("DMV") and the Board of Elections ("BOE") are responsible for the

registration of new voters and party affiliation switches of registered voters.

A New York resident can register to vote online at

https://dmv.ny.gov/more-info/electronic-voter-registration-application and the DMV will

forward all voter registration applications to the proper county Board of Elections. A

person can also register to vote In Person or By Mail by sending a completed New York

Voter Registration Form to their local County Board of Elections at least 25 days before

the election they would like to participate in. See N.Y. Elec. Law § 5-304.

53.      Through its Motor Voter provisions, the NVRA imposes voter registration

obligations upon state motor vehicle bureaus. Specifically, every time an eligible voter

obtains, renews or updates his or her driver's license with the New York Department of

Motor Vehicles (DMV) the State must simultaneously offer to register that person to vote

or to update the voter's registration record.

54.      The Motor Voter provisions require the DMV to simultaneously treat: (a)

"each . . .driver's license application (including any renewal application)" as an

"application for voter registration," 52 U.S.C. § 20504(a)(1); and (d) "any change of

address form" as a "notification of change of address for voter registration," 52 U.S.C. §

20504. Defendants have a legal duty to ensure that every eligible voter who submits a

driver's license application or renewal, or updates his or her address with the DMV, is duly registered to vote. 52 U.S.C. § 20507(a)(1)(A).

55.     The Motor Voter provisions apply to "each" renewal application and "any" change-of-address form submitted to the DMV, unless the voter "fails to sign the voter registration application" or "states on the form that the change of address is not for voter registration purposes." 52 U.S.C. § 20504. Accordingly, outside of those two narrow exceptions, all driver's license transactions are covered by the Motor Voter law, regardless of the method by which a voter applies, renews or updates his or her driver's license — the NVRA does not discriminate against voters who choose one transaction method over another. Online renewals and change-of- address transactions are thus expressly covered by the NVRA's plain text.

56.     At issue, huge voter registration problems are plaguing states with closed primaries for voters who were previously registered to a party and who suddenly found their registrations inactive or their party affiliations dropped.

57.     Additionally, a representative class of new voters who registered before the applicable new voter registration date of March 25, 2016 as required by N.Y. Elec. Law § 5-210 (3) were not in fact registered or were registered to party they did not designate or to no party.

58.     Upon information and belief, the purged Plaintiffs registered as required by N.Y. Elec. Law § 5-310 (2) on or before March 25, 2016, where "...the postmark shall be sufficient proof of the date of mailing."

Upon information and belief, New York State is not in compliance with the NVRA and HAVA.

59.     Purges of voter registration lists should be conducted in a transparent and uniform manner. Any rules or procedures developed with respect to purges or party affiliation changes should establish accountability at all stages of a purge or affiliation change.

60.     The NVRA Sec. 8 requires the "State to keep and make available for public inspection for at least two (2) years, all records concerning the implementation of programs and activities conducted for ensuring the accuracy and currency of official lists of eligible voters."

61.     Additionally, New York Election Laws have procedures in place that would make the purged voters list readily accessible for the Board of Election to verify the disenfranchised voters who vote on provisional ballots on election night, who have identified themselves as registered democratic voters who have been purged, or whose party affiliation was switched without their consent:

62.     Under N.Y. Elec. Law § 5-402 each Board of Election shall at least once a month, transmit to the appropriate board of elections a list of names and addresses of every voter whose registration was cancelled pursuant to N.Y. Elec. Law § 5-400.

63.     Under N.Y. Elec. Law 5-213 (2) the registration poll records of all such voters shall be removed from the poll ledgers and maintained at the offices of the board of elections in a file arranged alphabetically by election district, or on a computer.

FIRST CLAIM
*Unlawful Removal of Voters in violation of*
*Section 8 of the National Voter Registration Act of 1993 and*
*N.Y. Elec. Law*
**(As Against All Defendants)**

64.     Under the NVRA, any state purge practice must be "uniform, non-discriminatory, and in compliance with the Voting Rights Act of 1965." Additionally, under N.Y. Elec. Law Section 5-210 (5) New York State "shall conform to the requirements of the NVRA and HAVA."

65.     NVRA Sec. 8 and N.Y. Elec Law 5-400 (1) requires New York to make reasonable efforts to remove the names of ineligible voters from the official lists of eligible voters by reason of death, change of address, felony conviction, has been adjudicated incompetent, refused to take a challenge oath or personally requested his or her name to be removed.

66.     The Board of Elections has to follow strict statutory procedures in order to consider a voter "Inactive" as provided by N.Y. Elec. Law § 513.

According to N.Y. Elec. Law§ 5-213 (2):

> a person can be removed from the voter registration rolls
> only after the voter is given confirmation notice by first
> class mail of their inactive status with a chance to respond
> within (14) days. A voter must receive together with such notice
> of cancellation, a postage paid return card in a form approved by
> the Board of Elections. Such card shall provide a place for the
> set forth the reasons for their continued eligibility to vote
> in such county or city and to indicate his current address in the
> county or city and a statement that failure to return the card will
> result in cancellation of registration.

Only after this step may the Board of Election consider the voter "Inactive." See N.Y. Elec. Law § 5-213.

67. NVRA Sec. 8 does not allow a voter to be purged from the rolls by reason of a change of address or "if he or she has not voted or appeared to vote in an election beginning on the date ending on the day after the date of the second Federal General Election after the date of the confirmation."

68. According to NVRA Section 8, any change to the voter registration rolls must be completed ninety (90) days prior to a primary or general election. This year's primary date is April 19, 2016, so all "systematic" list maintenance activities must have been completed on or before January 20, 2016.

69. Upon information and belief, a representative class of Plaintiffs and unknown voters have been purged during the ninety (90) day period in violation of the NVRA and NY Elec. Law.

70. Upon information and belief, a representative class of Plaintiffs and unknown voters have been purged from the voter rolls at an unknown date, without their consent in violation of the NVRA and NY Elec. Law.

71. Upon information and belief, a representative class of Plaintiffs and unknown voters have been purged from the voter rolls at an unknown date, without their consent in violation of the NVRA and NY Elec. Law.

72. Upon information and belief, a representative class of Plaintiffs and unknown voters have had their party affiliations changed without their consent in violation of the NVRA and NY Elec. Law.

73.     Upon information and belief, a representative class of Plaintiffs and unknown voters have not been registered to vote, even though they met the applicable new voter registration date of March 25, 2016 t in violation of NY Elec. Law.

74.     Upon information and belief, a representative class of Plaintiffs and unknown voters have registered to vote by the applicable new voter registration date of March 25, 2016, but were not put in their designated party choice in violation of the NVRA and NY Elec. Law.

SECOND CLAIM
*Violation of Section 2 of the Voting Rights Act*
**(As Against All Defendants)**

75.     Plaintiffs re-allege and incorporate by reference all prior paragraphs of this Complaint and the paragraphs in the counts below as though fully set forth herein.

76.     Hispanics and African Americans in New York have suffered from, and continue to suffer from, discrimination on the basis of race. The ongoing effects of this discrimination include significant and continuing socioeconomic disparities between Hispanic and African Americans and Whites in the State of New York.

77.     New York is no stranger to voter suppression based on race and ethnicity. "One early-20th-century law required that voters in the state's largest cities re-register every year, a cumbersome mandate imposed under the pretext that urban voters' frequent changes of address opened the door to voter fraud. In 1921, New York State voters adopted a more comprehensive disenfranchisement strategy: They passed a referendum mandating that registrants pass an English-language literacy test…After the 1968 election, Manhattan, Brooklyn, and the Bronx became covered jurisdictions according to

a coverage formula that mandated preclearance for jurisdictions that had used a "test or device" to limit voting and had low registration and/or turnout statistics…In the decades since passage, the three covered New York City boroughs have cleared over 2,000 proposed changes in voting procedures with the federal government. But preclearance process has not always gone smoothly for the city. In the most dramatic case, in 1981, federal authorities stopped a mayoral primary (the de facto election in then-solidly Democratic New York) on two days' notice, since changes in city council districts had not been submitted for preclearance. When the Justice Department investigated subsequently, it found the proposed changes could not go forward because they had racially discriminatory effects. *See*

http://www.slate.com/articles/news_and_politics/jurisprudence/2013/02/voting_rights_su preme_court_case_why_is_new_york_defending_the_voting_rights.html

78.     New York's arbitrary voter purges will disproportionately affect and will cause an inequality in the opportunity of Hispanics, African Americans, and/or Native Americans in New York who have had and will continue to have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

79.     Under the totality of the circumstances, the voting laws, practices and provisions challenged under Section 2 have resulted and will result in less opportunity for Hispanics, African Americans, and/or Native Americans than for other members of the population of New York to participate in the political process and to elect candidate of their choice, and they violate Section 2 of the Voting Rights Act.

THIRD CLAIM
*Denial of Equal Protection Under the Fourteenth*
*Amendment of the United States Constitution*
*And Violation of 42 U.S.C. § 1983 by*
*Unjustifiably Burdening Voters*
**(As Against All Defendants)**

80.     Plaintiffs re-allege and incorporate by reference all prior paragraphs of this

Complaint and the paragraphs in the counts below as though fully set forth herein

81.     Under the Equal Protection Clause, any state election regulation that

imposes non-discriminatory restrictions on the right to vote must be justified by an

important state regulatory interest. *See* Burdick v. Takushi, 504 U.S. 428, 434 (1992).

Where the restrictions are severe, however, "the regulation must be narrowly drawn to

advance a state interest of compelling importance." *Id.*

82.     In determining severity of the restrictions, the court:

Must weigh "the character and magnitude of the asserted injury to the rights protected by

the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against the

precise interests put forward by the State as Justification for the burden imposed by its

rule," taking into consideration "the extent to which those interests make it necessary to

burden the plaintiff's rights. Id.  (quoting *Anderson v. Celebrezzze*, 460 U.S. 780, 789

(1983).

83.     New York has shamefully low voter ranking, number 44 in the 2012

election. *See*

http://takingnote.blogs.nytimes.com/2014/11/12/new-yorks-miserable-voter-turnout-isnt-

an-accident/

84.     New York's Board of Election arbitrary purging of registered voters will only exacerbate New York's low voter turnout and will assuredly disproportionately impact Hispanic, African American, and/or Native American Citizens.

85.     Plaintiffs' right to vote and the right to vote of tens of thousands of other New Yorkers are severely burdened by the arbitrary and unjustified purging of voters from the voter rolls.  Voters who will have their provisional ballots rejected are completely disenfranchised, often due to no fault of their own, but rather due to ineffective administration of elections and poll worker error. Minority voters face even greater risks of disenfranchisement and, therefore, greater burdens, as they are more likely to be given disinformation at the polls.

86.     Considering the State is required to keep records of its purges, it will not be burdened to present evidentiary proof in a hearing if it wants to deny a provisional ballot. The current system of deciding in a dark room without due process lacks transparency and allows for arbitrary decisions without redress. Furthermore, any burden that is placed on the State is wholly deserved considering the fact that it is at fault for erroneously purging the voters.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants are as follows:

1.     An Order Declaring that the Plaintiffs have been unlawfully purged and shall be permitted to vote in the primary election as enrolled voters in their party;

2.      A finding that NY Election Law Elec. Law § 8-303 (2) (b) is unconstitutional as applied;

3.      An Order Requiring the Board of Elections to count the provisional ballots along with the duly cast votes and only allowing the Board of Elections to challenge said ballets at an evidentiary hearing to be determined on the return date of this Order to Show Cause;

4.      An Order Declaring that New York's prohibition on counting purged voters' provisional ballots burdens New York voters generally and, specifically Hispanic, African-American and Native American voters without a sufficient  state justification for doing so, in violation of the Equal Protection Clause of the Fourteenth Amendment;

5.      An Order Requiring the Defendants to take such steps as are necessary to assure that voters who have been purged or disenfranchised are eligible to participate in New York State's April 19, 2016 primary election;

6.      An Order Requiring that New York's Primary be open to all voters regardless of party affiliation;

7.      An Order awarding Plaintiffs their costs, disbursements and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. §§ 1988, 1973 (e);

and

Such other or further relief as the Court deems just and proper.


Dated: Farmingdale, NY
         April 17, 2016

                                  **LAW OFFICES OF CLARKE
                                  & FELLOWS P.C.**

By: Blaire Fellows, Esq.
Attorneys for Plaintiffs
140 Gazza Boulevard
Farmingdale, NY 11735
Tel: 631-532-0221
Fax: 631-777-7310